May I please report, my name is Laura Kastner, I'm with the law firm of Zuber and Tellu and representing appellants to the Embassy of the Arab Republic of Egypt, the Arab Republic of Egypt, and the Cultural and Educational Bureau of the Embassy. I think the main issues with the district court's order in this matter is that it both seeks to accomplish too much in one sense and not enough in another in one fell swoop. The appellees, Mr. Lasheen and the Loomis Company, reached a settlement as between themselves and now they would like to be able to tie it up with a nice bow that the Foreign Sovereign Immunities Act does not apply and that would allow both of them to pursue any recovery versus any or all of the Egypt defendants based on default judgments. But neither the evidence in the district court file nor the case authority supports such a result. And moreover, it's not even clear that the district court's order would allow such a result. The order finds both of the waiver exception and the commercial activity exception of the FSIA applicable to each of the Egypt defendants. Well, for purposes of the commercial activities exception to sovereign immunity under the Foreign Sovereign Immunities Act, are you contending that none of the defendants have lost their immunity under the exception? Vis-a-vis Mr. Lasheen, I would say yes. None of the defendants have lost their immunity as to under the commercial activities exception. Mr. Lasheen was an Egyptian national who was in the U.S. on a temporary visa to study sponsored by his home country. This is, in essence, as to Mr. Lasheen, a dispute between a foreign national and his home country. And it's a ---- Well, but then if you're saying yes on this, why are the health care benefits plan and the benefits services management agreement not commercial activities leading to the loss of sovereign immunity? If they are commercial activities at all, I would say that they are commercial activities as between the Loomis Company, the benefits manager, and the Cultural and Educational Bureau. The exceptions to the Foreign Sovereign Immunities Act are to be construed narrowly, the waiver exception and the commercial activity exception. And they're to be applied and construed as to each particular defendant's activity. And this is the district court's ---- Activity, then you're saying that it would only apply to the ---- As between Loomis and the CDB. Loomis and the Bureau. The Cultural and Educational Bureau, yes, Your Honor. But then I guess then why should the Arab Republic of Egypt be treated differently than the other defendants? Doesn't a sovereign nation usually act through its embassy? I'm not sure that that's accurate, Your Honor. The issue here is ---- Well, if you're not sure, who would be sure? A representative from the government, but I am hearing this. Well, but I mean, how does it ---- I mean, if we accept that, I mean, nations have to act, you know, nations in and of themselves act through something. I mean, they can't. And an embassy seems to be a pretty logical way that they do it. I would say, I think, that a foreign state can act without acting through its embassy. I think here, again, the issue is that ---- But isn't there a great presumption that when the agency does act, purporting to act on behalf of the sovereign, that unless the action is disclaimed in some immediate sense, that that is the act of the sovereign? I mean, it's no different, really, than principal agency law to some degree. Well, we would argue that there is a difference, particularly, again, with respect to Mr. Lechine and his efforts to bring himself in as a third-party beneficiary. And I apologize. Your Honor's question went to the Republic. In the first instance, I would note that an argument was made below that there was no evidence that the signature on the Benefit Services Management Agreement was authorized. Leaving that aside, again, the conduct has to be analyzed as to the activities of each particular defendant. And it is the person claiming an exception to the immunity who has the burden of showing that. Neither of the appellees argued below or in their briefs on appeal regarding any specific activity by the Arab Republic of Egypt that would bring it within an exception to the Foreign Sovereign Immunities Act. Well, didn't the Cultural and Educational Bureau of the government sign the contract? Again, there is a signature on the document, Your Honor. Oh, I mean, is this case about disclaiming signatures to contract? Is that what we're here for? No, Your Honor. We did not advance that argument on appeal, Your Honor. All right. So we have to presume that the government has acted through its agency here. We can assume that a representative from the Cultural and Educational Bureau signed that. I cannot say honestly on this record what were the circumstances and what levels of approval it went through, Your Honor. If I may, again, with looking at, again, and the focus here is on Mr. Lachine and the fact that this is a dispute between a foreign national and his home country, which it is our position does not belong in the U.S. courts, but rather he would have whatever recourse he would have under his own country's laws. Well, let's assume that just for purposes of argument that we don't accept some of your arguments, that we take a different view. The district court did not rule on jurisdiction over Lachine's claims. Should this court decide that issue or remand it to the district court? I mean, and if it's a remand to the district court, what would be presented that we don't already have here? Well, I think — I do believe that the issue needs to be addressed, and I would submit that Mr. Lachine, frankly, did not present any admissible evidence below to support his claimed exceptions, but rather he tried to bootstrap himself onto any exception that might have been applicable. Well, my question is, should we address the issue of jurisdiction? I mean, do we have everything we need to address the issue of jurisdiction, or does it have to go back to the district court? I believe that you have what you need to address the issue of jurisdiction as to Mr. Lachine. And I would note that the argument was made in the briefs that this was a joint special motion by Loomis and Lachine. Both parties could have chosen to present all of their issues regarding the applicability of exceptions below. They chose to rely on Loomis' exception, claimed exceptions. However, both of them have attempted and have stated their intent to pursue default judgments against each of the Egypt defendants based upon the district court's recommendations on an application for default judgments. Are you saying that Loomis and Lachine should be treated differently? Yes, I am. And why is that? Your Honor, I think that there is a contract in the record to which Loomis and the Cultural and Educational Bureau was a party, were both parties. That is not the case as to Mr. Lachine. Mr. Lachine has not put forth evidence that brings himself within either the waiver exception as to any of the Egypt defendants. There's no explicit waiver, and he hasn't alleged an implicit waiver other than by trying to jump on to Loomis' case. And that's not how we analyzed the waiver exception to the FSIA. As far as commercial activity, Mr. Lachine, again, does not present any specific evidence, as it is his burden to do. He presents a lot of hearsay and a lot of rhetoric. And while I have great sympathy for Mr. Lachine's family. Well, he enrolled in the plan that Loomis administered. He purported to enroll in the plan. As to whether he was actually qualified for the plan, that's a different question. While there is a preexisting condition. Is that an issue? Is that in his case, then? I don't think that specifically comes up on appeal from the district court's order. I think Mr. Lachine, in his opposing brief, has raised the issue of ERISA's applicability. And the issue of ERISA is not specifically before the Court at this time. However, it is notable that if the settlement between Loomis and Lachine is based upon a finding that the FSIA does not apply to any of the Egypt defendants, if this court or the district court were to determine that the FSIA does apply to any of these parties, that settlement presumably gets knocked out, is void, and Loomis would presumably wish to raise the ERISA issue on appeal as it was given permission to do. Okay. I understand that. If we were to hold the other way, then there wouldn't be any difference. If we were to uphold, if we were to say that there is no immunity. Then I don't believe so. Correct, Your Honor. Should we be drawing a distinction between a third-party beneficiary to the contract and a third-party beneficiary to the waiver of sovereign immunity? In other words, is there a genuine distinction there to be made? I'm not sure that I completely understand the Court's question. I guess it's a given that Mr. Loomis is a third-party beneficiary to the health care benefit contract signed between the Cultural Affairs Agency and the — on behalf of the government. Isn't that — or is — I think that's an issue, Your Honor, sir. I understand you recognize that. But if we hold that that is the case, is that the end of the case? Or is there still a question of whether the — that resulting waiver of governmental immunity benefits Loomis? Benefits Loomis or benefits Mr. Lesheen? Lesheen, excuse me. Lesheen. Lesheen, yes. Excuse me. Again, I think we have the issue here where the district court and the parties below did not specifically address the waiver issue as to each of the defendants. Right. And that's why I'm asking you the question that I'm asking you. Okay. I think that, again — What's your position is on that point? I — well, I would stand — the Egypt defendants, as reflected below and in the briefs, are disappointed with the district court's decision as to the waiver argument and feel that Joseph should be limited — Joseph v. Nigeria should be limited to its facts. If there is a waiver, it would apply as between the CEB and Loomis. If Mr. Lesheen were to be deemed a third-party beneficiary of the benefits services management agreement, to which he is not a party and which governs only conduct as between the CEB and Loomis, then there would arguably be — then I — again, I think there is a distinction between his status as a third-party beneficiary and as an intended third-party beneficiary. We don't believe that he is an intended third-party beneficiary, and we don't believe that by virtue of his being a participant in the plan, he receives that status. I guess there's an answer in there somewhere. Okay. What's your best case for the proposition that we should be making a distinction? Is it the Second Circuit case? I'm sorry. Which case? The Second Circuit case. Is it Pennsylvania, Guy v. Lieberbach? That's okay. That's all. I'm going to — you know what? I'm going to — I don't want to take you off of your argument, and I think I'm getting a bit esoteric. I'm going to let you proceed. Well, I would — I'm sorry, Your Honor. I would refer the Court to the Haraff opinion that was cited in the papers, and that's out of the District of Columbia, and that was 565, Fed stuff second, 59. And I believe I'm just about out of time here. If there's any remaining, I would prefer to reserve for rebuttal. We'll give you — we'll give you a minute on rebuttal. Thank you. May it please the Court. I'm John Pierce. I represent the Loomis Company, which is the appellee in this case. I think the Court has hit upon a number of points. If there is ever a case for the commercial activity exception, this is the case. You have a foreign government entering into a contract with an American company. They expressly agree that the laws of the State of Pennsylvania are going to govern the agreement between the parties. And that is certainly under the case law that we provided an implied waiver. Secondly, the activity in which the parties are engaged is the selection of an administrator for a health benefits plan and program. It's the very kind of business activity that commercial entities engage in. There could not be a clearer case for exceptions under the Foreign Sovereign Immunities Act. This is the very type of conduct that these exceptions have been intended to apply to. Foreign entities and governments can't come into this country, negotiate contracts with — commercial contracts with U.S. entities and expect to be immune from the responsibilities under the contract. Where was this contract entered into as between the citizen and the government? Was it here or was it, in fact, there? There are declarations in the record from two people. One is — that reflect that it was entered into in Washington, D.C. and also in my client's office. The contract between Loomis and the government was entered into in Washington. That's correct. Where was the promise to provide health care benefits to Mr. Lashim made? Don't know the answer to that. I don't know whether he received a packet of information when he arrived as a visiting professor in the United States or whether there was some promise made to him when he arrived — before he arrived. I don't know. But I do know that as a part of the plan — I'm sure Mr. Anders can answer that — he was provided with a packet of information, and that packet is part of the record in this case. Let me ask you this. The district court did not rule on jurisdiction over Lashim's claims. Should this court decide the issue, or does it have to be remanded to the district court? Do we have everything that we need? I don't think you do. I think it probably has to be remanded to the district court for determination on that. Why? I don't — I think the record is fairly narrow here. Well, what else would be in the record? I mean, you know, this is — it's sort of — you know, I think we have jurisdiction to hear this case, but it's not the usual case that would come up in front of the Ninth Circuit at this point. So judicial — you know, we don't want to keep going back and forth, back and forth, back and forth. So — I think you have a lot of information. I'd have to survey the record to see whether there's anything — Wait. What is the point on which there would be a remand? This is jurisdiction over Lashim. For one matter, it should — this Court affirmed the district court's holding on waiver. It should be remanded for the purposes of determining the indemnification and attorney's visa to my client. Well, but I — but I specifically asked about jurisdiction over Lashim's claims. Yes. Why can't — it seems like we have everything here. Why can't we just do it and then — You may. I haven't thought of that issue at all before I got before you. There are summary judgments and other declarations that did not make this record. There were numerous motions in the court below. Well, there are issues on the merits, I take it. Yes. That need to be reviewed and determined. Yes, Your Honor. But I guess I'm not understanding what the jurisdictional point would be that you would think needed to be. I'm sorry, Your Honor. I'm just not understanding what the jurisdictional point is that you would want remand on. Well, clearly, with respect to my client, my client is Loomis. Right. The Court has jurisdiction. Right. I have no — and perhaps it's a better question for Mr. Lashim's counsel to ask. Right. When do we get to ask him? In a moment, if you'd like. Unless the Court has any more questions for me. I don't think so. I think my case is pretty straightforward. Thank you. Good morning. My name is Randy Andrus. I represent Lashim in the matter. Yes. You had a question? My question was, the district court did not rule on jurisdiction over Lashim's claims. Should this Court decide the issue, or do we have to remand it to the district court? And if it has to be remanded, why do we have to remand it? Why can't we decide it? Sure. I'm not sure if that's accurate. I think the district court had a limited ruling that basically said that they were going to set aside the default of the Egyptian defendants for the limited purpose of looking at whether or not the Foreign Sovereign Immunities Act applied in this particular case. That was it. Otherwise, there was a default. There was an answer made. All the Egyptian defendants had appeared. They had submitted themselves to the jurisdiction, and that's found in the record on page 760. Their answer in the action on the court below, submitted themselves to jurisdiction. To determine jurisdiction. Yes. It was a limited submission. It wasn't a concession. Well, then they participated, and they were defaulted. But you can't have a limited admission for the purpose of determining jurisdiction. I mean, that's like jurisdiction 101A, right? Well, again, I don't think the district court had to get to that issue, nor did it set aside the default that was entered on that issue to say anything other than let's look at this limited, reopen this case to the limited point of view of the applicability of the Foreign Sovereign Immunities Act. And that's all it did. Otherwise — Well, cutting to the chase, what is your position on whether we need to remand the question of jurisdiction over your client, of the jurisdictional claim of your client, or whether we could make that determination ourselves as a matter of the first instance? Sure. Lachine's position is that that question is not before the court. So if the court feels that it is before the court, then that issue would have to go back to the district court for consideration. But what more would the district court — what more would you present to the district court than we already know? There may be a lot of things that we would submit. Well, that's what I'm asking you, not there may be. What would they be? Well, they would be what happened between the parties, where it happened, when it happened, how it happened. There would be a lot of evidence that could be considered or submitted that isn't already in the rather large record that there is there, that there isn't here. So those issues — Why is — why do you equivocate, I mean, on this issue of jurisdiction? You claim that there is jurisdiction, correct? Correct. Why are you saying, well, I don't want you to determine that there is jurisdiction. I want you to send this case to the district court so that it can determine that there is. What more do you intend to prove before the district court, or do you proffer to prove before the district court that you have not already placed in this record? Well, I'm not equivocating. I'm saying that the jurisdiction was established and is there, and that issue is not here now on this — it's not one of the issues. You're saying it's already been determined, and therefore, we should just remand now for determination of the merits? Is that what you're saying? I'm saying that it has been determined by the default. They have been defaulted. I think the answer is yes.  You say that that issue was defaulted. Can you default jurisdiction? Sure. Sure. A determination as to the status and a judgment and a default certainly has to be taken into consideration when the court issued its — the district court issued its ruling. So you're saying by virtue of their default that that gives the court jurisdiction — that means that there is jurisdiction? Yes. Well, wait a minute. You're representing who? Lasheen. You're representing Lasheen. Yes. If there is jurisdiction with respect to Loomis, are you contending that there may not be jurisdiction with respect to Lasheen? No. I'm saying that it's all combined. It's the same. So if we uphold jurisdiction with respect to Loomis, wouldn't it be — what else would we — what point would there be? Well, our position is — Is there a legal differentiation for purposes of jurisdiction? That's what I'm trying to say. Our position is that jurisdiction is there, whether it's viewed in — with respect to Loomis or whether it's my client, Lasheen. Well, you're — you're — you're claiming a third-party beneficiary claim of jurisdiction, right? Well, third-party beneficiary, my understanding, is primarily an argument of contract and that there — he's a beneficiary of — You're a third-party beneficiary relative to Loomis, but are you a third-party beneficiary as to the Egyptian defendants? Yes. And how so? Well, the Egyptian defendants indicated in the record that they were the fiduciaries and the sponsors of this benefit plan. They admitted in their answer that all three of them acted as the sponsors and fiduciaries in — in this benefit plan. But you're saying that Loomis has no obligation to pay money to Lasheen, aren't you? Isn't that what you just said to Judge Callahan? No. Does Loomis have an obligation, according to you, to pay money to Lasheen? Yes. Mr. Lasheen was enrolled in a — And — and according to you, the only relief that can be granted against the Egyptian defendants is a — is relief to Loomis, not directly to Lasheen. That is reimbursement. No. That is not our position. Our position is that — Would you — would you help me through my confusion? I don't — I'm not really sure I understand what your claim is. Our claim is that the Egyptian defendants brokered, came into the U.S. market, entered into a contract in the United States, entered into a business arrangement — With Loomis. With Loomis. Not Lasheen. No. And with Lasheen. And both of them — The contractual — the contractual obligation is between Loomis and Lash — and the government, correct? The government — no. The government is a sponsor and fiduciary of a plan. Correct. It has a tax ID number in the United States. The plan document says it's submitted to — it's an ERISA plan. And that contract is signed between what parties? Whose ink is on that paper? The Benefit Services Management Agreement is between — is signed by Loomis and the Egyptian defendants. And no signature there by Lasheen, right? Lasheen — Under the contract. Certainly in that limited discussion, just in that isolated — just that portion. Except to that contract. Just in that isolated part of it. Right. Yes. Lasheen is definitely a third-party beneficiary of that arrangement. Right. And I don't think there was any — there's not dispute of that. Right. And you contend that under that arrangement, Loomis owes your client money. Under that arrangement — under that arrangement and the other facts and circumstances in the case, not just that alone. I'm just talking about that contract for a moment. If we can isolate, segment this case for one second. Under that contract, you contend that Loomis owes your client money. In addition to others, yes. Well, I'm — can I just jump in for a minute because I'm a little confused? Did you get — did your client get paid for the medical costs? Some. Some. Some. So is the relief that you want at the end of this whole litigation, does it represent benefits under the policy, essentially, that haven't been paid yet, or what? There's multiple damages that he's entitled to by statute under ERISA, one of which is the benefits under the plan, certainly. And there's other damages that ERISA establishes in terms of planned documents that should have been exchanged that were refused, and there's a penalty for that. There's other statutory relief that ERISA provides. What would seem, then, that under Guy versus Leiberbach, that performance of that promise under the contract would not satisfy the obligation to your client, that there's an additional obligation. And those are found in the — Is that correct? The ERISA statute itself. All right. Statutory — But we're talking here about the waiver of governmental immunity, and that's the question I had put to your opposing counsel. That is, does a determination by our court that your client is a third-party beneficiary of the contract under Loomis settle the question, or is there an independent question about whether the waiver of governmental immunity is a third-party benefit to your client as well? I think both. And on that case, on that point, it seemed to me that under — if we were to apply Guy versus Lieberdich, the answer would be no, that you are not a third-party beneficiary to the FISA waiver of governmental immunity. Yeah. I believe in the Guy case, that's the Second Circuit case. It's a Pennsylvania case, so I'm going to call it Second Circuit. So I believe — Okay. I think — Maybe we'll elevate the Pennsylvania courts to the Federal status here. Okay. Do — my time is limited, but — I think the judge would like to answer that question. To answer the question, I believe that independently of that analysis, Loomis has a third-party beneficiary status as to his claims against Loomis and or the — For contractual purposes. Contractual purposes, for statutory purposes. And jurisdiction purposes. Yes. Okay. Okay. Thank you. Thank you. Thank you for the additional time. Mr. Kessler, we'll give you a minute to — Thank you, Your Honor. And I will just briefly address the argument regarding whether the matter needs to be remanded to the district court. Again, it is our position that Your Honors have a sufficient record to make a determination as to — regarding jurisdiction as to Mr. Lesheen. Nowhere in Mr. Lesheen's papers on appeal is there any actual evidence regarding the various matters that he discusses. He relies upon hearsay, conjecture, et cetera. He had a full opportunity to provide supplemental excerpts of record. He did not do so. And we would respectfully submit that Your Honors can make the determination now. Thank you. Thank you. The matter just argued is submitted for decision. We'll hear the next case, which is Tracy Kollreuss v. Oilman Participation Corporation. Thank you.
judges: Lucero, Schroeder, Callahan